**WILLIAMS v. COMMONWEALTH.**

Court of Appeals of Kentucky.

March 6, 1951.

Fritz Krüeger, Somerset, for appellant.

A. E. Funk, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

HELM, Justice.

The appellant, Carl Williams, charged with murder, was found guilty of voluntary manslaughter and his punishment fixed at confinement in the State Reformatory for a period of 10 years. He appeals.

Appellant and his wife, Beulah Williams, owned and operated a grocery store and filling station on the east side of Highway 27 at Alpine. Appellant worked for a construction company during the day. About 9 p. m., July 2, 1949, Delbert Walker, Herman Blankenship, Willard Lowery, Mary West, and Glenna Brown drove to the Williams' store in Blankenship's automobile to get cigarettes. Mrs. Williams was in the store; her husband was in a back room eating his supper. Delbert Walker purchased cigarettes. Admittedly "all of the men were under the influence of intoxicating liquor." Walker, it is said, staggered against a show case. Mrs. Williams asked Walker to leave. The party then left the store. On the front porch Walker and Blankenship got into an argument which resulted in scuffling and wrestling. The Commonwealth's witnesses say it was a friendly bout; the defense witnesses state that Blankenship attempted to strike Walker with a concrete block, and that Walker drew a knife. Later appellant went to the front porch.

For appellant it was testified Walker used vile and abusive language, refused to leave the premises, and struck at ap-pellant with a knife; appellant struck Walker near the right temple with a pistol; at the same moment, the pistol fired, the shot taking effect near the temple.

For the Commonwealth it is shown that the deceased was unarmed; that appellant came out of his store with a pistol, walked down the steps, shot Walker in the head and then stooped down and struck him twice about the head with the butt of the pistol.

Dr. Holtzclaw, who examined the body, found a bullet wound about one inch above the right ear; the bullet ranged upward through the brain; he and the under-taker found a deep laceration across the bridge of the nose, a small laceration over the left eye, and a bruise on the top of the head. In the Doctor's opinion the latter wounds were caused by a blunt instrument.

In his brief, appellant says: "It is not contended by counsel for appellant that there was not sufficient evidence to take this case to the jury. * * * Admittedly it was a case for a jury's determination as to which set of witnesses the jury saw fit to believe." However, appellant urges that the court erred (1) in admitting incompetent testimony on behalf of the Commonwealth; (2) in refusing to admit competent testimony offered on behalf of the defendant; and (3) in overruling the defendant's objections made to prejudicial argument by the Commonwealth's attorney.

It was shown that a nickelodeon was playing in the Williams "place of business" before and after the trouble. Willard Lowery testified that appellant left "right after the killing." Appellant moved that the court "admonish the jury in respect of this so-called music playing." The court overruled the motion.

Counsel for the Commonwealth admit that the testimony as to playing the nickelodeon at the scene of the shooting was immaterial, but say that it was not prejudicial because appellant was not near it after the trouble, and had nothing to do with its being played but had gone to surrender to the officers, so that such testimony could not have influenced the jury.

Rev. Silas New, who was passing the store in his automobile at the time of the shooting, without objection told what he saw. He said, "It looked like a drunken rally." Later he was recalled and asked, "Were they in the habit of having drunken brawls there?" The court sustained appellant's objection to the question. When asked to admonish the jury not to consider that question, the court stated: "When I sustain an objection the jury knows that they are not to consider it."

 Appellant was cross-examined as to his premises and business. He said, "I sell groceries, run a filling station, we did have a nickelodeon in there." Asked if he was running a road house instead of a grocery, he answered, "We had no license." When the question was repeated, he answered that he had paid a license for the nickelodeon. The court overruled appellant's objections to the questions as to a license. When asked if he had been notified that he had no license, the court sustained an objection.

 Hubert Hughes, in rebuttal, was asked the usual question as to appellant's general moral reputation and replied that it was bad. On cross-examination, he was asked, "What have you heard bad about this man?" Hughes answered, "Just the way the business is run. Drinking and rough necking." Asked, "That's all you ever heard?" He answered, "Just a bad place for that." He was asked, "You are talking about the place, you are not talking about this man?" The court sustained the Commonwealth's objection. Appellant excepted and complains that the court would not permit the witness to answer that he was talking about the place and not about Carl Williams. But in addition to the above questions, appellant's counsel then asked, "You don't know anything bad about this man?" The witness answered, "No, not any more than he done there." Appellant's objection to the last answer was overruled. The testimony of other witnesses was substantially to the same effect.

 Roscoe Hyden and Robert Hyden, brothers, were witnesses for appellant.

It appears they had assisted in prosecuting decedent on a charge of mistreating their sister. Roscoe, asked if he had threatened to kill Walker, denied that he had. In rebuttal Mary West and Betty Stepp stated that he had. Robert denied saying to Walker in the presence of Betty "there will be another day." In rebuttal, Betty, asked if one of the Hyden boys had made that statement, answered "Yes." Appellant's objection to the last statement was overruled. We do not believe the jury could have been misled by the last question and answer.

Some of the above testimony in rebuttal was immaterial. Some of it was brought out on cross-examination by appellant. At the close of rebuttal evidence for the Commonwealth, the Court admonished the jury they would consider the testimony of the various witnesses as to the general moral character of appellant "only insofar as it may affect the testimony of this defendant as a witness, and for no other purpose. It neither proves nor disproves this charge." The Court also admonished the jury that they could consider the evidence of Miss Stepp and Miss West only "so far as it may show interest" on the part of the "Hyden boy," or so far as it may affect the credibility of the witness. It "neither proves nor disproves this charge."

Appellant, on cross-examination, was asked if he had prepared, sworn to and filed an affidavit setting out, among other things, a statement of what Mary West and Glenna Brown, if present, would testify. It was shown by appellant that the two girls were present in the witness room. They were not introduced by appellant. In rebuttal the Commonwealth was permitted to introduce the affidavit. Mary West was introduced in rebuttal by the Commonwealth. She denied, in substance, all of the allegations of appellant's affidavit as to what she would state. The Court overruled appellant's objection to the reading of the portion of the affidavit referred to above. This was not error. Civil Code of Practice, section 597; Pierson v. Commonwealth, 229 Ky. 584, 17 S.W.2d 697.

520

After a careful examination of the record, we do not find any rulings of the Court, as to admission or rejection of testimony or admonition as to its effect, substantially prejudicial to appellant.

The Commonwealth's attorney, in his concluding argument to the jury, said: "I say to this jury that from the testimony in this case, it is evident that Williams was selling something at this place of business other than groceries, as it was shown for more than a year and a half drunks hung around and congregated at this place, * * *." Clearly this statement was improper. We have repeatedly criticized such statements. The jury, believing the witnesses for the Commonwealth, found appellant guilty but fixed his punishment at imprisonment for only 10 years. In the light of this verdict and under all the facts and circumstances of this case, a majority of the court is of the opinion the judgment should not be reversed because of the improper argument.

The judgment is affirmed.